UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LESLIE KATZ, individually and on behalf of
all others similarly situated,

        Plaintiff,

vs.

CATAMARAN CORPORATION, MARK A. THIERER, STEVEN D. COSLER, PETER J. BENSEN, WILLIAM J. DAVIS, STEVEN B. EPSTEIN, BETSY D. HOLDEN, KAREN L. KATEN, HARRY M. KRAEMER, and ANTHONY MASSO,

        Defendants.

Case No. 15-cv-4513

**PLAINTIFF'S MOTION FOR EXPEDITED
DISCOVERY AND SCHEDULING A PRELIMINARY INJUNCTION HEARING**

Plaintiff, Leslie Katz ("Plaintiff"), submits this memorandum of law in support of his motion for an order providing for limited expedited discovery pursuant to Federal Rule of Civil Procedure 26(d)(1) and to have to the Court schedule a Preliminary Injunction Hearing prior to July 14, 2015. On that date, the shareholders of Catamaran Corporation ("Catamaran" or the "Company") will be asked to approve a transaction in which the Company will be purchased by UnitedHealthcare Group ("UnitedHealthcare"), pursuant to a materially misleading Proxy, as defined and further discussed below. Accompanying this motion is the Affidavit of Lynda J. Grant dated June 16, 2015 (the "Grant Affidavit", "Grant Aff.") and Exhibits A through F, thereto.

1

This application is necessary in part because defendants have refused to provide voluntary, limited expedited discovery notwithstanding that they scheduled the vote only a month from now. On May 28, 2015, plaintiffs' counsel conferred with defendants' counsel pursuant to Federal Rules of Civil Procedure, Rule 26(f), regarding whether defendants would agree to limited discovery and was informed that they would not. Thereafter, given plaintiff's position that a Rule 26(f) conference had been held, plaintiff promptly served Plaintiffs' First Request for Production of Documents Propounded to All Defendants (the "Document Request"), to which defendants refused to respond, and thereafter served defendants with Plaintiff's Initial Disclosure Statement Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. *See* Grant Aff. Exh. F.

As of this writing, plaintiff has not been contacted by defendants concerning discovery. With the date of the vote drawing near, and the fact that the Proxy, which was only filed a few days ago, contains materially misleading statements and omissions of material fact, which could cause irreparable harm to Catamaran shareholders if they are not rectified, plaintiffs are now forced to file this motion seeking both the documents requested in the Document Request, and two short examinations. *See* Grant Aff. Exhs. C-E. Plaintiff further seeks to have the Court set a Preliminary Injunction Hearing for the week of July 14th.

## **PRELIMINARY STATEMENT**

Catamaran is presently subject to a transaction (the "Transaction") in which UnitedHealth intends to purchase all of the outstanding shares of Catamaran for $61.50 per share. Plaintiff seeks to have the Court set a date for a Preliminary Injunction Hearing (the "Hearing") prior to the July 14, 2015 vote on the Transaction and to order limited expedited discovery in anticipation

2

of the Hearing, as set for in the Grant Aff., at Exhibits A, and C-E. If an injunction is not held, the vote on the Transaction will be effected through a materially false and misleading Proxy which was filed with the Securities and Exchange Commission ("SEC") on June 8, 2015, for a shareholder vote to be on July 14, 2015.[1]

The Proxy omits material information about Catamaran, which thus will mislead Class members into voting for the unfair and inadequate Transaction, and prevent them from making a fully informed determination as to whether to dissent to the Transaction and seek appraisal thereby causing them irreparable harm which cannot be remedied by money damages.[2] The Proxy fails to include the Company's 2014 EBITDA (earnings before interest, taxes, depreciation and amortization), a critical element to enable shareholders to determine what they are giving up in exchange for the cash consideration, and whether to dissent to the Transaction and seek appraisal. Further, the Proxy contains a depressed or artificially deflated estimate for Catamaran's 2015 EBITDA, which fails to take into account Catamaran's impressive historical growth, and is based upon growth of only 6.2%. The Proxy includes a summary of the underlying valuations performed by Blackstone Advisory Partners, L.P. ("Blackstone") in support of its fairness opinion (the "Fairness Opinion"), which fails to disclose critical metrics, including the "terminal value" used in certain of Blackstone's valuation methodologies, as required by applicable law. Finally, the Proxy falsely indicates that another bidder, denominated as Party 3 in the Preliminary Proxy, which made a preliminary but significantly higher bid for

---

[1] A copy of the Proxy is appended as Exhibit B to the Grant Affidavit.

[2] Catamaran is a Yukon corporation with a principal place of business in Schaumberg, Ill. Under Yukon law, a registered shareholder can dissent from the Transaction and seek appraisal. *See* Preliminary Proxy at 110-111.

the Company, failed to account for Catamaran's loss of certain customers, when in fact, Catamaran itself had made that fact well known.

If vote is not presently enjoined so that at a minimum, the Individual Defendants[3] can remediate the defects in the Proxy, Plaintiff and other Catamaran shareholders will be will be prevented from making an informed choice about whether to choose appraisal or approve the Transaction. Such damage cannot be adequately compensated through post-merger damages.[4][5] Plaintiff has conferred with Defendants' counsel before making this application, and was informed that Defendants would not participate in limited, voluntary discovery.

## STATEMENT OF FACTS

Catamaran is a leading provider of pharmacy benefit management ("PBM") services and healthcare information technology ("HCIT") solutions to the healthcare benefit management industry. Catamaran conducts its business primarily in the United States. Complaint (Docket No. 1) ¶ 30[6], hereinafter referred to as "Compl." The Company has been enjoying steady growth of

---

[3] Mark A. Thierer ("Thierer"), Steven D. Cosler, Peter J. Bensen, William J. Davis, Steven B. Epstein, Betsy D. Holden, Karen L. Katen, Harry M. Kraemer, and Anthony Masso.

[4] Notably, there are four cases pending in Cook County Circuit Court, captioned *Hintze v. Catamaran Corp. et al.*, No. 2015CH05676, *Hardock v. Catamaran Corp. et al.*, No. 2015CH06159, *Almario v. Catamaran Corp. et al.*, No. 2015CH06340, and *Fuelling v. Thierer et al.*, No. 2015CH06776. Those cases assert that the Proposed Transaction is being effected by breaches of fiduciary duties of Catamaran's directors. Under Yukon law, which applies, such claims must be brought derivatively in Canada, and as such, are subject to dismissal.

[5] A copy of the proposed Expedited Scheduling and Order Setting Preliminary Injunction Hearing (the "Proposed Order") is appended to the Grant Affidavit as Exhibit A. A copy of the limited discovery, Plaintiff's First Request for Production of Documents and a deposition notice to Thierer and a subpoena to Blackstone Advisory Partners L.P., are appended to the Grant Aff., as Exhibits C-E.

[6] The Complaint references Catamaran's preliminary proxy filed with the SEC on May 17, 2015. However, the allegations are equally pertinent to the Proxy filed on June 8, 2015.

more than 60% per year, for the last three years, which together with the opportunities for operating synergies which could be achieved from combining with other industry participants makes it an attractive acquisition candidate. Compl. ¶¶ 82-86.

On March 30, 2015, Catamaran announced that it entered into the Arrangement Agreement or merger agreement with UnitedHealth (and one of its wholly-owned subsidiaries) providing for each holder of Catamaran common stock who has not exercised and perfected dissenter rights of appraisal to receive $61.50 in cash for each share of Catamaran common stock. Compl ¶¶ 32, 34. In addition, upon consummation of the proposed Transaction, defendant Thierer, the current Chief Executive Officer ("CEO") of Catamaran will become the new CEO of the combined company, OptumRx, which will become a division of UnitedHealth. Compl ¶ 39. At the same time, a superior offer of between $64.50 and $67.50 per share with an unidentified "Party 3" was rejected purportedly because its bid failed to consider the Company's loss of two customers. Compl. ¶44. However, in truth and in fact, that very information was public and thus available (and likely considered), by the bidder, Party 3. Compl ¶ 63.

Approval of the Transaction by Catamaran's board of directors (the "Board") was based upon a fairness opinion rendered by Blackstone. Compl. ¶ 70. Defendants are required to obtain approval of the Transaction from Catamaran's shareholders. Compl. ¶ 36. However, some of the key information relied upon by Blackstone, namely the 2014 EBITDA and terminal values used in the discounted cash flow analysis, have not been disclosed in the Preliminary Proxy. Compl. ¶¶ 77-81, 88.

**ARGUMENT**

I.  GOOD CAUSE EXISTS FOR EXPEDITED DISCOVERY

Expedited discovery may be obtained where the movant demonstrates good cause. *Sheridan v. Oak Street Mortg.*, LLC, 244 F.R.D. 520, 521-22 (E.D. Wis. 2007) (granting motion for expedited discovery in putative class action). In order to show good cause for expedited discovery, "a plaintiff must articulate a sufficiently colorable claim and show a sufficient possibility of a threatened irreparable injury to justify imposing on the defendants and the public the extra (and sometimes substantial) costs of an expedited preliminary injunction proceeding." *County of York Emples. Ret. Plan v. Merrill Lynch & Co.*, 2008 Del. Ch. LEXIS 162, *16 (Del. Ch. Oct. 28, 2008).[7] Such good cause exists here. Plaintiff has more than a colorable claim that the Preliminary Proxy is material false and misleading, and omits material facts in violation of Section 14(a) of the 1934 Act such that Catamaran shareholders, and class members here, will suffer irreparable damage.

    A.    Plaintiff Can Demonstrate that He Has a Colorable Claim that the Proxy is Materially Misleading

Section 14(a) provides that it is unlawful for any person to solicit, in violation of regulations promulgated by the SEC, "any proxy or consent or authorization in respect of any security . . . registered pursuant to section 78l." *Northway, Inc. v. TSC Indus.*, 512 F.2d 324, 328 (7th Cir. 1975). Section 14(a) acts to "ensure disclosures by corporate management in order to enable shareholders to make an informed choice." *TSC Industries, Inc. v. Northway, Inc,* 426 U.S. 438, 444 (1976). Under Section 14(a), a plaintiff need not plead *scienter*, but only

---

[7] "Illinois courts are often guided by decisions of other jurisdictions, especially Delaware cases on corporate law issues. . . ." *RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*, 2012 U.S. Dist. LEXIS 14361, *48, 2012 WL 401490 (N.D. Ill. Feb. 7, 2012); *see also Treco, Inc. v. Land of Lincoln Sav. & Loan*, 749 F.2d 374, 379, 1984 U.S. App. LEXIS 20147, *16 (7th Cir. 1984).

sufficient facts from which negligence can be inferred. *Beck v. Dobrowski*, 559 F.3d 680, 681 (7th Cir. 2009). The primary misstatements and omissions in this instance relate to the summary of the Blackstone Fairness Opinion contained in the Proxy. It is well established that the fairness opinion and the summary describing the underlying analysis supporting the fairness opinion is an essential fact upon which shareholders rely in determining whether to vote for a transaction. *In re Pure Res. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002)("*Pure Resources*"). Consequently, full and accurate disclosure of the basis for the fairness opinion is material, especially where shareholders are faced with whether to take cash in a transaction or seek appraisal. *Id.* As explained in *Pure Resources*:

> our law should not encourage needless prolixity, but that concern cannot reasonably apply to investment bankers' analyses, which usually address the most important issue to stockholders – the sufficiency of the consideration being offered to them for their shares in a merger or tender offer.
>
> \* \* \*
>
> The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result. This proposition is illustrated by the work of the judiciary itself, which closely examines the underlying analyses performed by the investment bankers when determining whether a transaction price is fair or a board reasonably relied on the banker's advice.

*Id*.

Here, the summary of the Fairness Opinion omits material information and/or contains material misstatements with respect to Catamaran's 2014 EBIDTA and 2015 EBIDTA such that it is materially misleading.

1. <u>The Omitted 2014 EBITDA Is Material</u>

"[I]f a proxy discloses valuation information, that information must be complete and accurate." *Himmel v. Bucyrus Int'l, Inc.*, 2014 U.S. Dist. LEXIS 50481, *46, 2014 WL 1406279 (E.D. Wis. Apr. 11, 2014); *see also In re Netsmart Techs., Inc. S'holders Litig.,* 924 A.2d 171, 203 (Del. Ch. 2007)( finding that "[o]nce a board broaches a topic in its disclosures, a duty attaches to provide information that is 'materially complete and unbiased by the omission of material facts.'").

The Proxy in this instance fails to disclose Catamaran's 2014 EBITDA relied upon by Blackstone in issuing its Fairness Opinion although it discloses other financial information including the Company's estimated EBIDTA for the period of 2015 through 2019. Compl. ¶¶ 77-81. The 2014 EBITDA forms the basis for many of the valuations contained in the Proxy, and is an essential financial metric for shareholders determining whether to take cash for their shares, and/or whether to opt for appraisal. For instance, at page 48 the Proxy indicates that one of the bases for the Board's recommendation of the Transaction is that it implies an enterprise value of the Company of $13.6 billion, or a multiple of 16.8 times the Company's EBITDA, but fails to provide the EBITDA amount. Compl. ¶ 78. *In re Netsmart Techs*, the court noted that "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs . . . must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a 'fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the[] board as to how to vote . . . rely.'" *Id.* at 203-204.

The 2014 EBITDA was clearly a metric which was provided by management to and relied upon by Blackstone, yet it is not disclosed. Even more to the point, the summary of the

8

analysis underlying the Fairness Opinion is based in part upon the Company's 2014 EBITDA, yet fails to disclose this critical financial information. Compl. ¶¶ 77, 79; *See also* Proxy at 54 (disclosing only estimated EBITDA for 2015 - 2019); Proxy at 58 -59(Selected Companies Analysis, applying multiples to Company's 2014 EBITDA but failing to disclose it); Proxy at 60 (Selected Precedent Transactions, applying multiples to Company's last twelve months EBITDA).

EBITDA is critical to Blackstone's Selected Companies analysis. As stated in the Proxy at 59 and 60, Blackstone compared multiples for Catamaran and Selected Companies by selecting "representative ranges of TEV/2015E EBITDA and TEV/2014 EBITDA and then applied the selected ranges to the respective metrics for Catamaran, as provided by the management of Catamaran and reflected in the management case projections," including the 2014 EBITDA.

EBITDA, stands for earnings before interest, taxes, depreciation and amortization. However, because EBITDA is not a Generally Accepted Accounting Principle ("GAAP") calculation, it can be calculated in a variety of ways, leaving companies with wide discretion as to what will be included in the calculation and thus open to bias. In this instance, Blackstone included in its determination of the Company's 2014 EBITDA the Company's acquisition of Salveo Specialty Pharmacy ("Salveo"), made in March 2015, but did not include its larger acquisition of Healthcare Solutions, Inc. ("Healthcare Solutions"), made in April 2015. Compl. ¶ 80. Thus, it is impossible for Catamaran shareholders to understand how the value of the Company's shares might be appraised or the real basis for the Board's recommendation of the Transaction.

Without this information, Catamaran shareholders are unable to make a determination as to the value they would receive if they voted for the Transaction and gave up their share of the Company's future cash flows. For this reason alone, the vote must be enjoined and the Proxy corrected before the Special Meeting.

2. <u>The Company's Estimated 2015 EBITDA is Materially and Artificially Deflated</u>

The Proxy's disclosed estimates of revenue and EBITDA are materially deflated and thus misleading in order to misleading justify the Transaction as fair. Compl. ¶¶ 82-86. Catamaran has had a history of extraordinary growth. Indeed, the Company experienced historical revenue growth of 46-49% for 2013 and 2014. Compl. ¶ 83. In fact, the Company's revenue growth increased 100% in 2012, and had averaged 63.1% growth over the past three years. Compl. ¶ 83. Despite, having the "fastest growth in the industry" and 63.1% growth for the last three years, the 2015 estimated EBITDA used by Blackstone and disclosed in the Proxy is based upon the Company experiencing revenue growth of only 6.2%.

That the 6.2% revenue growth estimate is materially and artificially depressed in order to support a lower fairness opinion and the Transaction, is evidenced by the Company's latest earning release dated April 30, 2015. In that release, Catamaran reported for the first quarter of 2015, revenue and EBITDA increases of 22% and 26%, respectively, over the first quarter of 2014—making suspect any 2015 estimated EBITDA based upon revenue growth of only 6.2%.

The Proxy fails to provide any disclosure to explain why Blackstone's 2015 estimated EBITDA is so low, especially in light of the Company's first quarter revenues and is clearly misleadingly low and artificially depressed in light of the Company's historical growth and its first quarter revenues.

The EBITDA growth rates are a critical element in determining the value of Catamaran shares as Blackstone used projected EBITDA to calculate the terminal value "by applying a range of terminal value multiples of 10.5x to 11.5x, which range was selected based on Blackstone's professional judgment, to the projected [EBITDA.]" Accordingly, any inflation or deflation in the projected EBITDA could skew the calculation. *See, e.g.*, *City of St. Clair Shores Gen. Emples. Ret. Sys. v. Inland West Retail Real Estate Trust, Inc.*, 635 F. Supp. 2d 783, 792, 2009 U.S. Dist. LEXIS 27984, *17 (N.D. Ill. 2009)(denying defendant's motion where plaintiff alleges that the "fairness of the [valuations] were materially false and misleading because they were based on the inflated EBITDAs."). Further, Blackstone calculated TEV "as a multiple of estimated EBITDA for calendar year 2015. . . ." *See* Proxy at 59.

### 3. The Proxy is Materially Misleading for Additional Reasons

Here, the Proxy falsely states that on March 5, 2015, a potentially superior bid for the Company made by a party identified only as "Party 3" in the Preliminary Proxy, which made a preliminary bid of between $64.50 to $67.50 per share, did so without knowing about certain client losses (and therefore may not have been pursued at that level). Compl. ¶ 75.

In fact, during the February 26, 2015 conference call with analysts, the Company specifically stated that it had lost two customers, indicating that such information was available and Party 3 should have been aware of such information at the time that it made its superior bid, and that any statement otherwise in the Preliminary Proxy is materially false. Compl ¶ 76. Further, as disclosed in the Proxy at 49, Catamaran management "believed such negative impact [of the loss of the two customers] could be ameliorated from new potential sources of EBITDA."

The Preliminary Proxy is additionally false and misleading in that it fails to disclose whether other parties which either bid or were interested in bidding offered both Thierer and

11

Park continued employment and when in the bidding process UnitedHealth offered such employment to Thierer and Park. Compl. ¶ 63.

### 4. The Summary of the Fairness Opinion Omits Material Metrics

Stockholders are entitled to a "fair summary" of the work of financial advisors upon whose advice the board recommends a vote on a merger. *Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 Del. Ch. LEXIS 169, 2007 WL 4292024 at *11 (Del. Ch. Nov. 30, 2007). The Blackstone Fairness Opinion's Discounted Cash Catamaran ("DCF") Analysis contained in the Preliminary Proxy, however, fails to state or indicate: (a) how the terminal values were derived; (b) how the discount rates were determined; and (c) specifically how the number of shares is being determined. Compl. ¶ 88.

The Proxy at 58 states that "A DCF analysis is designed to estimate an implied value of a company by calculating the present value of the estimated unlevered future free cash flows as well as the terminal value of the company in order to arrive at the value of that business. Yet the Proxy fails to disclose how the terminal values were derived and in fact fails to disclose the terminal value itself. Compl. ¶ 88. *In re Netsmart Techs*, the proxy disclosed that a portion of the company's enterprise value was attributable to the terminal value, "yet failed to disclose the terminal value." *Id.* at 203. The court noted that "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed." *Id.* at 203-204.

Further, the Proxy discloses the "range of discount rates from 8.5% to 9.5%," but fails to disclose the derivation of the discount rates. Compl. ¶ 88. For instance, in determining the discount rate, the Proxy does not disclose the factors used to determine weighted average cost of

capital. The Preliminary Proxy also failed to disclose how the number of shares are being determined.

> B.  Catamarans' Shareholders will be Irreparably Harmed Unless the Vote is Enjoined and/or the Proxy is Corrected

Given these material misstatements and omissions, Plaintiff has demonstrated that there is good cause and that he has a colorable claim for securities fraud sufficient to warrant expedited discovery and the scheduling of a preliminary injunction hearing. Failing to do so, would result in irreparable harm to Catamaran's shareholders. It is black letter law that a vote pursuant to a false and misleading proxy constitutes irreparable harm as it deprives shareholders their right to cast a fair and informed vote. *Mills v Electric Auto-Lite*, 396 U.S. 375, 377 (1970) (holding that a solicitation which is materially misleading poses the kind of irreparable harm to shareholders which can justify injunctive relief). This is true even where the transaction in issue is adequate. *Id*. at 381(noting the foreclosing relief for the dissemination of a false proxy even where the transaction was fair would undercut shareholders' rights to the free exercise of their franchise).

Courts routinely permit expedited discoveryin suchsituations to avoid the irreparable harm which will ensue from a vote on a materially false proxy. *Moravek v. FNB Bancorp, Inc.*, No. 86 C 4571, 1986 U.S. Dist. LEXIS 23188, at *10-12 (N.D. Ill. July 3, 1986) (determining that plaintiff must be allowed discovery prior to their preliminary injunction hearing and, given the short period of time during which the current tender offer will be open, such discovery needs to be expedited). *In re Staples, Inc. Shareholders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) ("[i]t is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected."). *See also In re*

13

*Transkaryotic Therapies, Inc.*, 954 A.2d 346, 360 (Del. Ch. June 19, 2008)(there is a preference for injunctive relief before a vote where disclosure issues exist, because post-merger relief is not an efficient or precise means for remedying such violations, as, among other things, it will cause the court to speculate about damages).

Given the need for expedited discovery and the existence of irreparable harm if an injunction is not issued, discovery this action is not stayed under the Private Securities Litigation Reform Act of 1995, ("PSLRA"), which would otherwise be applicable. *See In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1038, 2004 U.S. Dist. LEXIS 12648, *138, Fed. Sec. L. Rep. (CCH) P92, 860 (N.D. Ill. 2004)(quoting 15 U.S.C. § 78u-4(b)(3)(B).)("unless the court finds upon the motion of any party that particularized discovery is necessary . . . to prevent undue prejudice to that party."). *See also Singer v. Nicor, Inc.,* 2003 U.S. Dist. LEXIS 26189, *4, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) (granting plaintiff's motion to partially lift the PSLRA's discovery stay where plaintiff could be "unfairly disadvantaged if they do not have access to the documents" and the discovery request is sufficiently particularized).

## II. <u>DEFENDANTS WILL NOT BE PREJUDICED</u>

The Individual Defendants and even Catamaran will not sustain any prejudice by such expedited discovery. Under the Arrangement, the parties expect to close the Transaction by in the fourth quarter of 2015. The limited expedited discovery sought here, preliminary injunction briefing and a hearing can be held before the Transaction is scheduled to close.

## III. <u>DISCOVERY WOULD BE LIMITED</u>

Plaintiff seeks limited discovery, including specific documents, a short deposition of Thierer and a short examination and some documents from Blackstone. *See* Grant Aff., Exhs. C-E. This

limited discovery, which is so crucial to Plaintiff and other Catamaran shareholders, is not burdensome on either the Company or Blackstone, who should have those documents readily available.

## **CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests that the Court enter an order entering the appended Expedited Discovery Order, which allows Plaintiff to engage in expedited discovery for the purposes of moving for a preliminary injunction, and provides for expedited discovery and briefing of a preliminary injunction by the parties.

June 17, 2015

**LASKY & RIFKIND, LTD.**
Norman Rifkind
Amelia S. Newton

/s/ Norman Rifkind
351 W. Hubbard St., Suite 401
Chicago, IL 60654 US
Telephone: (312) 634-0057
Fax: (312) 634-0059
rifkind@laskyrifkind.com
newton@laskyrifkind.com

*Local Counsel for Plaintiff*

Lynda J. Grant
**THE GRANT LAW FIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119

Tel: (212) 279-5050
Fax: (212) 279-3655

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

  I, Norman Rifkind, an attorney herein, certify that a copy of the Plaintiff's Motion for Expedited Discovery and Scheduling a Preliminary Injunction Hearing was served via CM/ECF on the counsel of record and to the following via hand delivery on this 17th day of June, 2015:

 James W. Ducayet
 SIDLEY AUSTIN LLP
 One South Dearborn
 Chicago, Illinois 60603

 *Attorney for Defendants*


Date: June 17, 2015

                   /s/ Norman Rifkind

                 Norman Rifkind
                 Amelia S. Newton
                 LASKY & RIFKIND, LTD.
                 351 W. Hubbard St., Suite 401
                 Chicago, Illinois 60654
                 Tel: (312) 634-0057
                 Fax: (312) 634-0059